IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br><br>________________________ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, arises from two requests by Plaintiff The American Society for the Prevention of Cruelty to Animals (ASPCA) to the United States Department of Housing and Urban Development (HUD or "the Department") for records relating to HUD's Moving to Work (MTW) demonstration program. The ASPCA sought information regarding HUD's policy of exempting housing authorities participating in the MTW program from federal laws and regulations permitting residents to have pets. This information would be used to educate the ASPCA's supporters and the interested public about federal housing policies that impact the availability of pet-friendly

housing. Defendant HUD wrongly denied the ASPCA's request for a public-interest fee waiver under 5 U.S.C. § 552(a)(4)(A) on the ground that the ASPCA—one of the nation's largest animal welfare organizations—would be unable to disseminate the requested records to a "reasonably broad audience of persons interested in the subject." Through this action, the ASPCA seeks a declaration that HUD has acted unlawfully by denying the fee-waiver request and an order requiring HUD to produce, at no cost to the ASPCA, all records responsive to the ASPCA's FOIA request.

## PARTIES

2. Plaintiff ASPCA is a national not-for-profit animal-welfare organization with more than two million members. Incorporated in New York in 1866, the ASPCA's mission is to "provide effective means for the prevention of cruelty to animals throughout the United States," with a focus on keeping pets in homes and out of shelters, while increasing the protections afforded to animals under the law. http://www.aspca.org/about-us.

3. Defendant HUD is an agency of the federal government and has possession of and control over the records Plaintiff seeks. A division of HUD, the Office of Public Housing Investments, oversees the MTW demonstration program.

## JURISDICTION AND VENUE

4. This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B) because the Defendant, a cabinet department of the United States government, resides in this district and a substantial part of the events and omissions that gave rise to this action occurred in this district.

## FACTS

**<u>The Moving To Work Program</u>**

6. Moving to Work is a demonstration program overseen by the Office of Public Housing Investments, which is part of the Office of Public and Indian Housing, a division of HUD. According to HUD, MTW provides public housing authorities (PHAs) the opportunity to design and test locally-designed strategies that use federal dollars more efficiently, help residents find employment and become self-sufficient, and increase housing choices for low-income families. (*See* Moving to Work, Department of Housing and Urban Development, available at http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/ph/mtw (last visited April 17, 2017)).

7. The Department has interpreted the exemptions created by the MTW program as giving authority to participating PHAs to waive certain protections for pet

ownership provided by existing federal laws and regulations, such as Section 31 of the Housing Act of 1937 (42 USC § 1437z-3) and 24 C.F.R. 960 subpart G (24 C.F.R. § 960.701-960.707). *See* MTW Standard Agreement, Attachment C, Statement of Authorizations, at pg. 7, ¶ 10, attached hereto as Exhibit A. (Noting that "[b]uildings or portions of buildings . . . may be designated as . . . Pet-Free," and stating, "This authorization waives certain provisions of Sections 3, 6, 7, 16, and 31 of the 1937 Act and 24 C.F.R. 945 subpart C, 960 Subparts B, D, E and G as necessary to implement the Agency's Annual MTW Plan.").

8. The ASPCA supports housing policies that help keep people and pets together while protecting the safety of residents and the interests of landlords. The organization opposes housing laws and policies that ban pets or severely restrict pet ownership based on arbitrary factors such as size and breed, without regard to individual behavior and temperament, and thus seeks to educate its members and the interested public about the possibility of the MTW program allowing participating PHAs to implement such restrictions on a scale that could impact thousands of tenants nationwide.

**<u>The ASPCA's FOIA Requests</u>**

***The First Request***

9. On October 19, 2015, the ASPCA submitted a FOIA request seeking the following records: (a) All documents and correspondence discussing HUD's

decision to include Section 31 of the Housing Act of 1937 (42 USC § 1437z-3) and 24 C.F.R. 960 subpart G (24 C.F.R. § 960.701-960.707) for waiver in the standard Moving to Work Agreement put into use in 2006; (b) all documents and correspondence discussing any participating MTW agency's request for waiver from Section 31 of the Housing Act of 1937 (42 USC § 1437z-3) and/or 24 C.F.R. 960 subpart G (24 C.F.R. § 960.701-960.707) or urging HUD that these sections of law be exempted for MTW PHAs; (c) all documents and correspondence discussing which sections of the Housing Act of 1937 and its implementing regulations would be waived in the standard Moving to Work Agreement put into use in 2006; (d) all documents and correspondence discussing which sections of the Housing Act of 1937 and its implementing regulations would be waived in the standard Moving to Work Agreement currently being negotiated; and (e) all documents and correspondence discussing HUD's authority under the Omnibus Consolidated Rescissions and Appropriations Act of 1996 to waive sections of the Housing Act of 1937 and its implementing regulations as a part of the Moving to Work demonstration program. Ex. B.

10. The ASPCA's FOIA request included a paragraph noting that the ASPCA was entitled to a waiver of fees under FOIA's "public interest" provision. *Id.* at 1. *See* 5 U.S.C. § 552(a)(4)(A)(iii).

11. The Department denied the waiver request on March 14, 2016, stating that the ASPCA, by asserting only "conclusory statements" as to the applicability of the waiver provision, had failed to meet its initial burden of identifying the public interest to be served by disclosure of the requested documents. Ex. C at 1-2.

12. The ASPCA administratively appealed the denial of the waiver on March 24, 2016. Its appeal explained over multiple pages why the FOIA request met each and every criterion for application of the public interest fee waiver. It detailed the size of the organization; the depth and breadth of its staff's knowledge in the areas of pet retention and public education; and the ASPCA's wide range of public outlets including its quarterly magazine, online advocacy program with regular email updates to supporters, substantial social media following, and daily coverage in major media outlets nationwide. Ex. D at 2-3.

13. The Department nonetheless denied the appeal on April 20, 2016, on the ground that the ASPCA's request failed to show that "disclosure [would] contribute to an understanding of the subject by the public at large." Ex. E at 2.

14. Specifically, HUD's denial claimed that although the ASPCA had stated an intention to share information "with its own staff and network of supporters and through its own online publication or magazine," such distribution did not "constitute an intent or ability to distribute this information to a reasonably broad

audience." *Id.* This assessment ignored the ASPCA's enumeration of the multiple other means by which it intended to share the information.

15. The Department later sent the ASPCA a letter estimating a fee of $7,862.40 and requiring that the ASPCA submit this payment in order to receive responsive records. Ex. F.

16. The ASPCA sent an inquiry to FOIA officer William Smith on June 7, 2016, requesting further explanation of how this fee had been calculated and seeking information on how it might narrow or tailor its request. Ex. G. at 2. In response, the FOIA officer suggested, not for the first time, that the ASPCA withdraw its FOIA request. *Id.* at 1-2.

17. The Department informed the ASPCA via a July 7, 2016 email that the ASPCA's FOIA request had been closed for nonpayment. Ex. H at 1.

***The Second Request***

18. Deborah Press, the ASPCA employee who had filed both the original FOIA request and the appeal of the fee-waiver denial, subsequently discussed the denial in a telephone conversation with Deborah Snowden, Chief of the Department's FOIA Branch, and Sandra Wright, HUD Government Information Specialist, who subsequently invited the ASPCA to refile the FOIA request and waiver application with a different member of HUD's FOIA staff.

19. Pursuant to this conversation, the ASPCA filed a new FOIA request on July 12, 2016. The request sought the same categories of documents as the original request. Ex. I.

20. The July 12 FOIA request was accompanied by a separate fee waiver request that included six numbered sections comprising fifteen paragraphs of explanation as to why the ASPCA's request satisfied each of the required criteria for a fee waiver. Ex. J.

21. HUD again issued a cursory denial of a fee waiver the following week, stating only that the ASPCA's request "does not specifically address how your request meets any of the criteria for determining whether a fee waiver is appropriate." Ex. K at 1. The denial did not address any of the specific contentions in the ASPCA's extensive fee-waiver request.

22. The ASPCA appealed this determination in a letter dated August 16, 2016. Ex. L. The appeal included a six-part legal analysis structured around HUD's own regulations interpreting the FOIA fee-waiver requirements, *see* 24 C.F.R. 15.106(k)(ii)). Specifically, the ASPCA demonstrated that (a) the subject of the requested records concerned identifiable operations or activities of the federal government; (b) the disclosable portions of the requested records were meaningfully informative about such operations or activities and were "likely to contribute" to an increased public understanding of those operations or activities; (c) the disclosure

would contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to merely the individual understanding of the requester; (d) the public's understanding of the subject in question would be enhanced by the disclosure to a significant extent; (e) the ASPCA has no commercial interests in the disclosure of the requested records; and (f) the public interest is therefore greater than the ASPCA's nonexistent commercial interest. Ex. L at 3-9.

23. The appeal devoted particular attention to the third element listed above—that the disclosure should contribute to the understanding of a "reasonably broad audience of persons interested in the subject"— given that that criterion had been previously articulated as a basis for HUD's denials of the ASPCA's fee-waiver requests. *Id.* at 5-7.

24. The ASPCA explained that it sought the requested records in order to "contribute to a greater public understanding of why pets may be prohibited in housing authority properties participating in the MTW demonstration programs." *Id.* at 5. It further noted that, "[a]mong the ASPCA's supporters are members who reside in properties managed by MTW housing authorities, members residing in public housing not participating in MTW, and others who reside in privately owned housing," and that "[o]ur members are concerned about the availability of pet-friendly housing, and a number of them are directly affected by HUD's MTW policies." *Id.*

25. Addressing its "expertise in the subject area," *see* 24 C.F.R. § 15.106(k)(ii)(2)(3), the ASPCA explained that it has "a staff of attorneys, policy experts, veterinarians, animal behaviorists, and researchers with vast knowledge in the area of pet retention." *Id.* at 5.

26. The ASPCA's appeal also spoke to its "ability and intention to effectively convey information to the public." *See* 24 C.F.R. § 15.106(k)(ii)(2)(3). The letter referenced the organization's "staff of writers, editors, and communication professionals skilled at effectively conveying information to the public." *Id.* at 5. Also noted were the ASPCA's "multitude of publications," including its quarterly magazine, *ASPCA Action. Id.* The letter also discussed the ASPCA's online advocacy program, the Advocacy Brigade, which "provides supporters with regular updates vial email and our website on animal-related bills, regulations, and policies." The Advocacy Brigade, it noted, "has 1.3 million members who took online action through our email alerts and website resulting in approximately 460,000 messages to lawmakers in 2015 alone." *Id.* The ASPCA explained that its "advocacy materials are available to the general public via our website and through social media," and that the organization has "over 1.5 million followers on Facebook and 337,000 on Twitter." *Id*. Finally, the letter appeal noted that "the ASPCA's capacity to distribute information is not limited to its own member communication channels." *Id.* at 6. To the contrary, "the organization receives daily coverage in television,

radio, and print media nationwide," and is "able to consistently secure national broadcast, print, and online media coverage in top tier outlets such as the *New York Times*, the *Wall Street Journal*, *USA Today*, the *Los Angeles Times*, "Good Morning America," "Today," National Public Radio, and the *Huffington Post*. *Id.*

27. In addition to providing the factual basis to support its request for a fee waiver, the ASPCA's appeal also contained extensive citations to case law contrary to HUD's analysis of the fee-waiver issue. Included were numerous examples of courts holding that similarly situated organizations were entitled to fee waivers, as well as cases in which waivers were extended to entities or individuals with "markedly *less* capability than the ASPCA to disseminate the requested information." *Id.* at 6, n.2.

28. Despite the ASPCA's exhaustive demonstration of its eligibility for a fee waiver, HUD nonetheless denied the ASPCA's second appeal on September 14, 2016. The denial, HUD explained, was based on the ASPCA's supposed failure to demonstrate that it could "contribute to an understanding of the public at large." Ex. M at 1.

29. The Department offered three justifications for its denial. First, it reasoned that even if the ASPCA routinely secures national media coverage, it is ultimately up to the media what it decides to report. Accordingly, HUD asserted that it would be "speculative to assume that the press would be interested in the requested information." *Id.* at 2.

30. Second, HUD stated that that the "ASPCA's intent to share information with its own staff and network of supporters . . . through its own on-line publication or magazine does not constitute an intent or ability to distribute this information to a reasonably broad audience." *Id.*

31. Finally, HUD purported to distinguish a case cited by the ASPCA in its appeal, *Cmty. Legal Servs., Inc. v. United States HUD*, 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005), on the ground that "the interested group, low- and moderate- income families impacted by the Moving to Work demonstration, in that case has a greater population than the targeted group, those interested in housing-related pet ownership prohibition, in this case." *Id.* at 2. The Department offered no data or other evidence to support this claim, nor did it address any of the many other cases that the ASPCA relied upon in its appeal.

32. On September 27, 2016, HUD assessed a fee of $5,662 for processing the ASPCA's request, and noted that the Department would not take action on the request without receiving payment. Ex. N.

33. The ASPCA has exhausted its administrative remedies for securing a full public interest fee waiver under FOIA.

**COUNT I**
**VIOLATION OF 5 U.S.C. § 552(a)(4)(A)**

34. ASPCA realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

35. Under 5 U.S.C. § 552(a)(4)(A)(iii), the ASPCA is entitled to a full public interest waiver of fees that otherwise would be assessed in conjunction with its request, and HUD has not provided a valid legal basis to deny the ASPCA's request for a fee waiver.

The denial of the ASPCA's request for a public interest fee waiver violates FOIA.

**WHEREFORE**, the ASPCA requests that this Court:

A. Declare that the ASPCA is entitled to a full fee waiver under 5 U.S.C. § 554(a)(4)(A)(iii) in connection with its FOIA request;

B. Order HUD to grant the ASPCA a fee waiver in full and to search for, copy, and produce all records responsive to the ASPCA's FOIA request at no cost to the ASPCA;

C. Award the ASPCA its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E);

D. Expedite this action in every way pursuant to 5 U.S.C. § 552 and 28 U.S.C. § 1657; and

E. Grant all other relief the Court deems appropriate.

Respectfully submitted,

/s/Grace L. Pan

JENNIFER H. CHIN
*Vice President, Legal Advocacy*
jennifer.chin@aspca.org
ROSS W. BERGETHON
*Legal Advocacy Counsel*
ross.bergethon@aspca.org
THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS
520 Eighth Avenue, 7th Floor
New York, New York 10018
(212) 876-7700

GRACE L. PAN
grace.pan@hklaw.com
CHRISTINE N. WALZ
christine.walz@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010
*Attorneys for Plaintiff,*
*The American Society for the Prevention of Cruelty to Animals*